## Pierce et al. v. Huff.

June 18, 1940.

J. S. Sandusky, Judge.

E. Bertram and Hile Pritchard for appellants.

J. A. Flowers and J. G. Smith for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

C. P. Huff conveyed two tracts of land, each containing something over 40 acres, to his son, Robert, prior to December, 1937. Shortly after the conveyance Robert filed suit against the heirs of Beckham Anderson, who were the owners of two adjoining tracts of land containing some 100 acres. Robert alleged in that suit that the Andersons had trespassed upon his land. The Anderson tracts had been patented by Phillip Hall. One tract, containing 60 acres, was patented in 1806, and the other, containing 42 acres, was patented in 1855. Robert's suit culminated in the entering of an agreed

judgment (December, 1937). That judgment described the boundaries of the Anderson lands. Subsequently, Robert sold his two tracts back to his father. The Anderson lands came into the hands of the appellants, Sherrod Pierce and Bill Pierce.

Shortly after Robert reconveyed the property to him, C. P. Huff brought this suit against the Pierces, alleging that they had entered upon his land and had cut some timber thereon. The issues were joined, after the Pierces pleaded the judgment in the suit of Robert Huff against the Andersons; proof was heard; and upon submission of the case to a jury a verdict was rendered in favor of Huff. The sole question involved in this appeal is, whether the judgment entered in accordance with that verdict properly located the southwestern corner of the 60 acre Hall tract. That corner was located at "a chestnut oak, now a rock and stump just south of the old Phillip Hall spring and house" in the judgment now before us. It was referred to in the Hall patent of 1806 as "beginning at two white oaks near a sinking spring." In the aforementioned agreed judgment it was referred to as "beginning at two white oaks near a sinking spring."

While C. P. Huff presents a very plausible story as to the location of the corner near the old Phillip Hall house, we have reached the conclusion, after a careful examination of the record, including exhibits, that the survey upon which the agreed judgment was based located the corner some 56 poles to the southwest of the point contended for by Huff, at "two white oaks near a sinking spring."

The county surveyor, who made the survey upon which the agreed judgment was based, testified that he began that survey at two white oaks near a sinking spring (the point contended for by the Pierces). When he so testified he referred to his map, "Exhibit A." That exhibit gives the beginning point as just indicated. It is clear from the record that there is a sinking spring near the corner where the county surveyor said he began to survey. There is evidence that there is a sinking spring up near the corner contended for by Huff, as well as the spring referred to as the old Phillip Hall Spring. A witness who testified for Huff (one of his counsel) said on direct examination that he helped make the sur-

vey upon which the agreed judgment was based, and that the corner was located at the point contended for by Huff, but on cross examination he testified that the parties to that suit agreed for the county surveyor to make the survey and that he did not see the land surveyed.

It is insisted that the location of the beginning corner as contended for by the Pierces would cause an overlapping between the 1806 Hall patent and the 1855 patent, but there would be an overlapping in a different place, if Huff's contention should be sustained. Furthermore, the line running from the corner from which the county surveyor started (N. 65 E. 112), the division line between the Huff property and the Pierce property, would run part of the way through a cleared field, if Huff's contention should be sustained. We think also that the record shows that there are more old survey markings when the line, N. 65 E. 112, is run from the beginning corner as located by the county surveyor (two white oaks near a sinking spring).

It is with some reluctance that we reverse a judgment in a case such as this, but we are forced to the conclusion that it is erroneous. The agreed judgment is binding upon the parties to the action in which it was rendered, and upon their privies. It is not subject to collateral attack. City of Paducah v. Paducah Traction Company, 168 Ky. 198, 181 S. W. 1093; Johnson v. Carroll, 190 Ky. 689, 228 S. W. 412; Potter v. Webb, 186 Ky. 25, 216 S. W. 66; Commonwealth v. Miniard, 266 Ky. 405, 99 S. W. (2d) 166.

Wherefore, the judgment is reversed with directions to set it aside and to enter a judgment in accordance with this opinion.